# GUSRAE KAPLAN NUSBAUM PLLC
## ATTORNEYS AT LAW

SCOTT H. GOLDSTEIN
MARTIN H. KAPLAN
LAWRENCE G. NUSBAUM
RYAN J. WHALEN

120 WALL STREET-25TH FLOOR
NEW YORK, NEW YORK 10005
——
TEL (212)269-1400
FAX (212)809-4147

OF COUNSEL
ROBERT L. BLESSEY
HOWARD F. MULLIGAN

www.gusraekaplan.com

September 18, 2019

**VIA ELECTRONIC FILING**

Hon. Analisa Torres, U.S.D.J.
Southern District of New York
500 Pearl Street
New York, New York 10007
Torres_NYSDChambers@nysd.uscourts.gov

Re:   **Gusrae Kaplan Nusbaum PLLC v. Applied Energetics, Inc. et. al., Civ. Action No. 19-cv-6200 (AT)(DCF)**

Dear Judge Torres:

We represent Plaintiffs, Gusrae Kaplan Nusbaum PLLC ("GKN") and Ryan Whalen ("Whalen") in the above-referenced action. We write pursuant to Your Honor's Individual Practices in Civil Cases, Section III(A) and in response to the letter of Defendants, Masur Griffitts + LLP ("MG") and Mary O'Hara ("O'Hara") (collectively, the "MG Defendants"), dated September 10, 2019, setting forth the basis for the ECG Defendants' anticipated motion to dismiss (the "MG Letter"). Dkt. No. 63.

## I.      Factual Background

In 2016 and 2017, GKN represented George Farley ("Farley") in his capacity as sole director and chief executive officer of Applied Energetics, Inc. ("AE")[1] in a shareholder derivative litigation (the "Superius Litigation") in Delaware Chancery Court. *See* Complaint, ¶¶ 35-45 (Dkt. No. 1). After approximately nine months of litigation, in August 2017 the Superius Litigation was dismissed in its entirety; an unpaid balance of $33,324 remained for legal services rendered by GKN. AE informed GKN that it would indemnify George for the unpaid balance, as required under its by-Laws and 8 Del.C.145(c), but that as of August 2017 it did not have the current funds to pay the balance due. *See id.*

In January 2018, various AE shareholders (some of whom are now officers of AE and defendants in this action) commenced a proxy solicitation seeking the removal of Farley as AE's director and CEO. *See id.* 46-55. The proxy solicitation sought Farley's removal based upon the identical allegations of wrong-doing that were alleged in the Superius Litigation. AE requested

---

[1] AE is a defendant in this action.

GUSRAE KAPLAN NUSBAUM PLLC

Hon. Analisa Torres, U.S.D.J.
Southern District of New York
September 18, 2019
Page 2

that GKN provide legal counsel in connection with the proxy solicitation. *See id.* GKN agreed to provide legal counsel to AE, if AE paid the balance due GKN for services rendered in the Superius Litigation. In January 2018, AE still did not have the funds to pay GKN; at the request of AE, GKN reluctantly agreed to be paid via AE restricted stock (the "Shares"). *See id.* In January and February 2018, on behalf of AE, O'Hara drafted the opinion letter approving the issuance of the Shares to Plaintiffs. *See id.* ¶¶ 54-71.

AE's new management took over on or about March 8, 2018 and O'Hara continued as AE's corporate and securities counsel. From March 2018 through June 20, 2019, AE represented in public filings and statements to third parties that the Shares are authorized and validly issued. *See id.* 88-116. For example, on June 20, 2019, O'Hara informed Michael Mullings ("Mullings"), chief compliance officer for Continental Stock Transfer ("Continental")[2] that AE had no legal basis to stop the removal of the restrictive legends from the Shares. *See id.* 114-116. On June 25, 2019, Plaintiffs contacted O'Hara and asked that she confirm her representations to Mullings. *See id.* ¶ 149.[3] Rather than responding to Plaintiffs' request, O'Hara emailed the Demand Letter to Mullings and Plaintiff's broker. *See id.* ¶ 150. The Demand Letter contradicts AE's previous disclosures, including O'Hara's statements to Mullings on June 20, 2019 because the letter purports to set forth a legal basis why the Shares issued to Plaintiffs were not validly authorized. Accordingly, the notion asserted by the MG Defendants that Plaintiffs *requested* that Defendants engage in their libelous conduct is meritless.

## II.     Securities Fraud

The MG Defendants assert that the "purchaser-seller" rule precludes Plaintiffs' securities fraud claim. ECG Letter, p. 2. It does not. GKN is, in fact, a purchaser of the Shares as per the January 2018 agreement between GKN and AE. *See* Dkt No. 1 at ¶¶ 48-73. *See Horst v. W.T. Cabe & Co., Inc.*, 1977 WL 1051 * 3 (SDNY 1977). Plaintiffs also adequately allege reliance on the false statements of AE. *See id.* 88-116. Pursuant to the agreement between Plaintiffs and AE (*see id.* 46-67), AE was obligated to cooperate in the removal of the restrictive legends as soon as feasible. The MG Defendants' fraudulent conduct, in part, concerns their roles in the fraudulent scheme to prevent Plaintiffs from being able to remove the restrictive legends from the Shares. *See id.* ¶¶131-163. To plead the requisite "transactional nexus" of a securities fraud claim, it is not necessary that MG's wrongful conduct preceded Plaintiff's agreement with GKN or induced the agreement with GKN. *Horst* 1977 WL 1051 at *6.

The MG Defendants allege that the Complaint does not set forth that the MG Defendants acted with the required state of mind to deceive, manipulate or defraud. This is false. *See* Complaint ¶¶ 98-116, 142-156 and 166.

---

[2] Continental is AE's stock transfer agent.
[3] Plaintiff's June 25, 2019 email to O'Hara was also sent to Mullings and Plaintiff's broker, the ECG Defendants were <u>not</u> included in the email.

GUSRAE KAPLAN NUSBAUM PLLC

Hon. Analisa Torres, U.S.D.J.
Southern District of New York
September 18, 2019
Page 3

### III.   Tortious Interference With Prospective Business Relations

The Complaint asserts securities fraud and libel *per se* claims against the MG Defendants, either of these claims constitutes the "independent tort" that is generally required to be alleged as part of a tortious interference with prospective business relations claim. *See Carvel Corp. v. Noonan,* 3 N.Y.3d 182 (2004).

### IV.   Libel *Per Se*

The MG Defendants allege that the Demand Letter only contained protected legal opinions. MG Letter, p. 3. It did not. The Complaint satisfies the first element of a libel claim. The libelous statements in the Demand Letter are not statements of opinion, which are supported by a factual recitation. *See Medcalf v. Walsh,* 938. F.Supp.2d 478, 486 (SDNY 2013). Rather, the Demand Letter expressly states that Plaintiffs entered into an "obvious conspiracy" with Farley, breached the Rules of Professional Conduct and breached their fiduciary duties to AE. Nowhere in the Demand Letter is there language that would signal to the average reader that the letter contained mere opinion. For example, the letters sent by defendant in *Lombardo v. Dr. Seuss Enter., L.P.,* 2017 WL 1378413 * 3 (April 7, 2017), included the caveat that "upon information and belief, the Infringing Work appears to be based on or derived from the book *How the Grinch Stole Christmas.*" Here, the Demand Letter contains no such language that indicates it is an opinion.

Moreover, the MG Defendants (and the other defendants) were well aware at the time the Demand Letter was published that the purported factual recitations -- upon which the libelous statements were premised -- were false. The alleged factual claims are also capable of being proven false. *See Hayashi v. Ozawa,* 2019 WL 1409389 * 3 (SDNY March 3, 2019) and *Enigma Software Grp. USA LLC v. Bleeping Computer LLC,* 194 F.Supp. 3d 263, 281 (SDNY 2016).

The Demand Letter made no threat or even mention of the possibility of litigation. In fact, from March 2018 through June 20, 2019, AE repeatedly disclosed that the shares issued to Plaintiffs were validly issued and authorized. *See* Complaint ¶¶ 88-94, 99-102, 135-138, 148 and 153. It was not until almost 16 months after Plaintiffs received their shares that the Demand Letter was published, not coincidentally, on the same day that the 9 million shares of AE stock owned by insiders and affiliates were first registered for public sale. Unlike the facts in *Front v. Khalil,* 24 N.Y. 3d 713, 716-717 (2015), where the publisher of the alleged defamatory letter actually commenced a litigation; here, for 16 months AE made no demand for the return of Shares. The timing of the publication of the Demand Letter shows that its intent was not to assert a good faith legal demand, but to manipulate the supply and demand of AE stock in the public market.

Finally, the MG Defendants allege their conduct did not constitute libel *per se* because they only published the Demand Letter to its potential stock broker and AE's stock transfer agent. *See* MG Letter, p. 4. This argument is without legal or factual merit. Plaintiffs' stock broker is a business associate.

GUSRAE KAPLAN NUSBAUM PLLC

Hon. Analisa Torres, U.S.D.J.
Southern District of New York
September 18, 2019
Page 4

Per Your Honor's Individual Practices in Civil Cases, Section II.A.ii., Plaintiffs will await an order of the Court.

Very truly yours,

Ryan J. Whalen